UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICKY B. DUDASH, individually and
as assignee of David Heisig,

    Plaintiff,

vs.                                          Case No. 8:16-cv-290-T-27AEP

SOUTHERN-OWNERS INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's Motion for Partial Summary Judgment (Dkt. 55), Defendant's Motion for Summary Judgment (Dkt. 56), and the respective responses (Dkts. 67, 69). Upon consideration, the Motions (Dkts. 55, 56) are DENIED.

**Background**

Nicky Dudash was injured in an automobile accident with David Heisig. It is undisputed that Heisig was liable for the accident. Prior to Dudash filing suit, Heisig's automobile liability insurance carrier, Southern-Owners Insurance Company, refused to tender the limits of Heisig's insurance policy of $100,000. After a jury trial, Dudash obtained a judgment of $865,000 against Heisig. She then commenced this third-party common law bad faith action on behalf of herself and as assignee of Heisig alleging that Southern-Owners did not attempt in good faith to settle her claim against Heisig.[1] (Dkt. 19). Southern-Owners moves for summary judgment on Dudash's bad faith claim.

---

[1] Heisig assigned any rights he had against Southern-Owners to Dudash. (Dkt. 19 at 65-70).

1

Dudash moves for partial summary judgment on the narrow issue that Southern-Owners could have settled Dudash's claim against Heisig within policy limits.

**Undisputed Material Facts**

Southern-Owners issued a policy to Heisig with bodily injury liability coverage in the amount of $100,000 per person and $300,000 per accident. (Dkt. 58 ¶ 7). While the policy was in effect, on December 1, 2005, Heisig rearended Dudash while she was stopped. (Dkt. 58-2 at 22). He was cited for careless driving. (Dkt. 58-6 at 8). The accident was reported to Southern-Owners on December 6, 2005, and Jeremy Moore was assigned as the adjuster. Dudash retained attorney Jeffrey Byrd to represent her. After minimal activity on the claim, on May 2, 2008, Byrd offered to settle her claim against Heisig for $100,000. (Dkt. 58-6). Included in the offer were her medical bills and records. Southern-Owners' internal review found that Heisig was fully liable. (Dkt. 58-10). Southern-Owners did not tender the policy limits or otherwise attempt to negotiate, and the offer expired on June 2, 2008. (Dkt. 58-6).

Six months after the offer expired, on January 12, 2009, Moore requested $45,000 in settlement authority from Scott Norris, an attorney in Southern-Owners' legal department, which was granted. (Dkt. 58-13). The same day, Moore offered to settle the claim for $29,000. (Dkt. 58-14). On April 16, 2009, Moore followed up again on his settlement offer. (Dkt. 58-15). Between February and August, Dudash had two surgeries. (Dkt 58-22). On August 31, 2009, Dudash filed a lawsuit against Heisig. (Dkt. 19 ¶ 22). On September 18, 2009, Byrd advised that the time for pre-suit negotiations had passed. (Dkt. 58-18). On January 19, 2010, Moore requested authority of $100,000 from Norris, which was granted. (Dkt. 58-23). On January 20, 2010, Southern-Owners, through counsel, offered to settle Dudash's claim for $100,000. (Dkt. 58-24). On January 22, 2010, the offer was rejected. (Dkt. 58-26). On March 4, 2011, a jury verdict was entered in favor of Dudash for

2

$875,000. (Dkt. 19 ¶ 26). Final judgment in the amount of $865,000 was entered in favor of Dudash and against Heisig on November 6, 2012. (Dkt. 19 at 62).

**Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, facts are viewed and reasonable inferences are drawn in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court's role, therefore, "is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrision*, 323 F.3d at 924.

**Discussion**

### A. Southern-Owners' Motion for Summary Judgment

Southern-Owners moves for summary judgment contending that the undisputed facts show that it acted in good faith at all times in handling the claim. Dudash counters that whether under the totality of the circumstances Southern-Owners acted in bad faith is a question for the jury.

Dudash brings this common law bad faith action on behalf of herself and as an assignee of Heisig.[2] Florida common law recognizes third-party bad faith actions brought by an insured or the

---

[2] She does not bring a statutory bad faith action pursuant to Fla. Stat. § 624.155.

3

injured third party against the insured's liability carrier.³ *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 545 (Fla. 2012); *Fidelity & Cas. Co. v. Cope*, 462 So.2d 459, 461 (Fla.1985). Whether she brings the action individually or as an assignee, the basis of the action remains the duty owed to Heisig and his damages. *See Fidelity*, 462 So.2d at 460-61; *Thompson v. Commercial Union Insurance Co.*, 250 So.2d 259, 264 (Fla.1971). And, in handling the defense of claims against Heisig, Southern-Owners "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony Insurance Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980).

In determining whether Southern-Owners acted in bad faith, the "totality of the circumstances" standard applies. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004). The issue therefore "is whether, under all of the circumstances, [Southern-Owners] could and should have settled the claim within the policy limits had it acted fairly and honestly toward [Heisig] and with due regard for his interests." *Id.* at 679.

Generally, the question of bad faith is reserved for the jury. *Id.* at 672-73; *see Gutierrez*, 386 So.2d at 785 ("The question of failure to act in good faith with due regard for the interests of the insured is for the jury."); *see also Campbell v. Gov't Employees Ins. Co.*, 306 So.2d 525, 530-31 (Fla.1974) ("[R]easonable diligence and ordinary care [are] material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact – not of law."). And, that will be the case here.⁴

---

³ In cases founded on diversity jurisdiction, such as this, the substantive law of the forum state applies. *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009)

⁴ It is worth noting that Southern-Owners asserts conflicting positions as to whether there are disputed material facts in its motion and response. It moves for summary judgment arguing that the undisputed facts show it acted in good faith at all times during the handling of the claim (Dkt. 56 at 2). Yet, in response to Dudash's motion for partial summary judgment, it contends that there are outstanding factual issues regarding whether it had a reasonable opportunity to settle the claim, (Dkt. 67 at 4), and argues that "[i]t is for the jury to decide[.]"(*Id.* at 11-12). These positions cannot be

4

Southern-Owners owed a duty to "investigate the facts, give fair consideration to a settlement offer that [was] not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Gutierrez*, 386 So.2d at 785. "Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So.2d 12, 14 (Fla. 3d DCA 1991). And, based on the facts of this case, a reasonable juror could infer that Southern-Owners' delays in negotiating were willful and without reasonable cause.

On May 2, 2008, Byrd extended a settlement offer to Southern-Owners of $100,000. (Dkt. 58-6). The offer expired Monday, June 2, 2008 at 4:00 p.m, but could be extended if the extension was requested in writing within ten days "with a reasonable explanation for such request." (Dkt. 58-6 at 5). It included Dudash's medical records and bills, documented her current medical expenses of $17,280.06, and advised that her future medical expenses were in the range of $2,500 to $3,000 annually, "not including any surgery costs that may result because of this accident." (Dkt. 58-6 at 4) (emphasis added). She was diagnosed with cervical disc herniation, thoracic sprain/strain, and lumbar ligamnetous instability, and assigned a 16% permanent partial impairment rating as a direct result from the automobile accident. (Dkt. 58-6 at 12). The likelihood of her experiencing future degenerative changes was "certainly a significant one." (*Id.*). And, while her records show that in May 2006, she elected to continue conservative treatment, multiple treatment options were discussed, including operative care. (Dkt. 58-6 at 70).

On May 12, 2008, instead of making a counter offer or requesting an extension of time to respond, Moore asked for information regarding Dudash's personal automobile insurance and her

---

reconciled. If in considering the "totality of the circumstances" there is a factual dispute as to whether it could have settled the claim, then the jury must determine whether under the totality of the circumstances it acted in bad faith. *Berges*, 896 So.2d at 672.

5

treatment, if any, for a motor vehicle accident in 1992. (Dkt. 58-8). Between May 12 and May 16, 2008, Moore memorialized his evaluation of the claim. (Dkt. 69-1; Dkt. 55-1 at 52:25-53:7). He noted that Heisig was 100% liable, and there was the "**possibility of surgery**[,] but [Dudash] will treat conservative[ly]." (Dkt. 69-1) (emphasis added).

On May 21, 2008, Moore sent a memorandum to Norris in the legal department. (Dkt. 58-10). Notably, Moore recognized that "**he believed the insured to be at fault for the accident**," Dudash's "[m]edical records **indicate the possibility of future surgery** but at this time seems very speculative," and "[i]f she goes and decides to have surgery, **this case could be a policy limits case**, but Mrs. Dudash has chosen to treat conservatively." (*Id.*) (emphasis added). He valued the case between $32,500 and $42,500, but did not request authority from Moore. (*Id.*). Plaintiff's expert testified that this evaluation was flawed.[5] (Dkt. 59-5 at 93:25-94:12).

When the offer expired, Moore knew Heisig was 100% liable for the accident, that Dudash was diagnosed with several injuries, there was a "significant" likelihood of future degenerative changes, a possibility of future surgery, and if she had surgery the case could be a policy limits case.[6] And, although before the offer expired, he called Byrd's office three times and sent four faxes requesting additional information, he never countered, sought an extension of time to respond, or expressed a willingness to negotiate or otherwise resolve the claim.

Southern-Owners contends that it did not engage in settlement negotiations because it was

---

[5] Southern-Owners' motion to exclude her testimony (Dkt. 57) will be addressed by a separate order.

[6] Southern-Owners argues that Dudash's future decision to have surgery should not form the basis of a bad faith claim. (Dkt. 56 at 18). It relies *Feijoo v. Geico Gen. Ins. Co.*, 137 F. Supp. 3d 1320 (S.D. Fla. 2015), aff'd, 15-14947, 2017 WL 429254 (11th Cir. Feb. 1, 2017). There, the court granted the insurance carrier's motion for summary judgment where the excess verdict was based, in part, on the plaintiff changing her decision to have surgery. *Id.* at 1324. *Feijoo* is unpersuasive. In *Feijoo*, the insurance carrier made a prompt counter offer to plaintiff's initial demand and relied on the plaintiff's testimony that she would not pursue surgery. *Id.* Here, Moore did not respond with a counter offer for six months and Dudash did not testify that she would not pursue surgery.

6

waiting for two items of information from Byrd: (1) Dudash's automobile liability insurance limits for personal injury protection and medical payments, and (2) details of any treatment for a motor vehicle accident in 1992.[7] It relies on *Clauss v. Fortune* to support its contention that an insurer is entitled to verify and obtain evidence of the damages asserted. 523 So.2d 1177, 1178 (Fla. 5th DCA 1988). While this contention is not without merit, Southern-Owners had sufficient evidence to assign a value to Dudash's claim, assign 100% liability to its insured, and recognize the case could be a policy limits case.[8] Yet, it did not attempt to negotiate before the settlement offer expired or seek an extension. And, it did not attempt settlement negotiations for six more months.[9] (Dkt. 58-14). A reasonable juror could, therefore, infer that Southern-Owners' delays were willful and without reasonable cause, and that it acted in bad faith. *Powell*, 584 So. 2d at 14; *Gutierrez v. Yochim*, 23 So. 3d 1221, 1226 (Fla. 2d DCA 2009) (reasonableness of insurance carrier "to insist on additional medical information beyond what it already knew" is a factual dispute for the jury).

Southern-Owners argues that after the settlement offer expired, there was no bad faith conduct that caused Heisig's damages because there was not a realistic opportunity to settle due to Byrd's conduct.[10] This argument is flawed because it does not consider that the standard in a bad

---

[7] Southern-Owners' position that waiting for information for Dudash's personal automobile liability insurance information from her attorney was reasonable is unpersuasive. Personal injury protection in Florida is a statutory requirement, Fla. Stat. § 627.736(1) (July 5, 2005 - June 30, 2006); (Dkt. 55-1 at 92:1-4), the details of her personal automobile insurance would not effect the extent of her injuries, and as Plaintiff's expert testified, the information could be obtained from her insurance carrier. (Dkt.59-5 at 66:11-13); (Dkt. 58-2 at 16-17) (Moore's notes regarding information he obtained from Dudash's insurance carrier).

[8] Notwithstanding, Moore testified that when he received the additional information, it did not change his value of the case. (Dkt 55-1 at 94:1-6).

[9] Southern-Owners focuses on the action or inaction of Byrd during this time frame. However, the law of bad faith in Florida "focus[es] . . . not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Berges*, 896 So.2d at 677.

[10] It relies on three cases, *Novoa v. GEICO Indem. Co.*, 12-80223-CV, 2013 WL 172913 (S.D. Fla. Jan. 16, 2013), aff'd, 542 F. App'x 794 (11th Cir. 2013) (unpublished), *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893 (Fla. 2010), and *Westchester Fire Ins. Co. v. Mid-Continent Cas. Co.*, 569 F. App'x 753 (11th Cir. 2014) (unpublished), in support of its argument regarding causation. These cases are distinguishable.

faith case is the totality of the circumstances, not an isolated time frame. *Berges*, 896 So.2d at 677. While Byrd's conduct may be relevant to the question of whether there was a realistic opportunity to settle, based on the foregoing, whether Southern-Owners acted in bad faith is a question for the jury. *See Gutierrez*, 23 So. 3d at 1226; *Barry v. GEICO Gen. Ins. Co.*, 938 So. 2d 613, 618 (Fla. 4th DCA 2006); *Powell*, 584 So. 2d at 14. Southern-Owners' motion, therefore, is due to be denied.

## B. Dudash's Motion for Partial Summary Judgment

Dudash moves for partial summary judgment on the narrow issue that Southern-Owners could have settled her claim against Heisig within policy limits.[11] (Dkt. 55). As Southern-Owners correctly argues, Dudash's motion is inapposite to the applicable standard, that is, whether under the totality of the circumstances, a reasonable juror could find that Southern-Owners could and should have settled the claim within the policy limits had it acted fairly and honestly toward Heisig and with due regard for his interests. *Morrision*, 323 F.3d at 924; *Berges*, 896 So.2d at 672. As discussed *supra*, this is a question for the jury and Dudash's motion is due to be denied.

---

In *Novoa*, the insurance carrier agreed to tender the policy limits nine days after the accident, the claimant declined every settlement offer, and the claimant never made a settlement proposal or counter offer. 543 F. App'x at 796. Unlike *Novoa*, Dudash made a settlement offer, Southern-Owners did not respond with a counter-offer within the time permitted, and it did not make an offer of settlement for six more months.

In *Perera*, the damages sought were pursuant to a consent judgment negotiated between two of the insured's three insurance carriers and the insured did not face exposure to liability in excess of the three combined policies. 35 So. 3d at 902-03. There is not a consent judgment in this case, but rather a jury verdict exposing Heisig to liability in excess of his policy limits.

*Westchester* involved a dispute between a primary insurer and an excess insurer. The district court found after a bench trial that the primary insurer acted in bad faith in rejecting a post-verdict settlement offer without informing the excess insurer of the offer. 569 F. App'x at 756. In reversing, the Eleventh Circuit held that there was no evidence that the failure to communicate the offer caused damage to the excess insurer, no evidence that the excess insurer would have accepted the offer, and no evidence that the excess insurer incurred an obligation that it would not have been required to pay. *Id.* In contrast, at summary judgment and viewing the facts and reasonable inferences in the light most favorable to Dudash, a reasonable juror could infer that Southern-Owners' delay in negotiating was bad faith and that the delay caused Heisig to be exposed to an excess judgment.

[11] Dudash also asserts conflicting positions in her motion and response. She seeks summary judgment on one of the factors considered in a bad faith case, yet argues in her response to Southern-Owners' motion that it is "improper" to consider isolated time periods "because the question of whether an insurer fulfilled its good faith duties requires consideration of the totality of the circumstances." (Dkt. 69 at 10 n. 9).

**Conclusion**

Accordingly, based on the foregoing, Defendant, Southern-Owners Insurance Company's, Motion for Summary Judgment (Dkt. 56) and Plaintiff's Motion for Partial Summary Judgment (Dkt. 55) are **DENIED**.

**DONE AND ORDERED** this 28th day of April, 2017.

*[signature]*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record